**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

STEPHEN WYMAN AND NANCY
LONG, A PARTNERSHIP DBA
BOULDER CREEK BREWERY AND
CAFE ET AL,

        Plaintiffs,

        v.

SUNBEAM PRODUCTS, INC. ET AL,

        Defendants.

Case No. 17-cv-4926-BLF

**ORDER RE: MOTIONS *IN LIMINE***

[Re: ECF 64, 65, 66, 67, 68, 70, 71, 72, 73, 74]

On July 25, 2017, Stephen Wyman and Nancy Long, a Partnership dba Boulder Creek Brewery and Café ("Boulder Creek"), and Stephen Wyman ("Wyman") (collectively, "Plaintiffs") filed the instant complaint against Defendants Sunbeam Products, Inc. ("Sunbeam") and Regal Beloit America, Inc. ("Regal") (collectively, "Defendants") for negligence and strict product liability after a ceiling fan manufactured by Sunbeam in 1994 caught fire and damaged Plaintiffs' business. *See* First Amended Complaint ("FAC"), ECF 27. The Court held a final pretrial conference on April 8, 2021, during which it issued oral rulings on the parties' motions *in limine*. The Court's rulings on the parties' motions *in limine* are summarized as follows:

- Plaintiffs' Motion *in Limine* No. 1: TERMINATED AS MOOT
- Plaintiffs' Amended Motion *in Limine* No. 1: DENIED
- Plaintiffs' Motion *in Limine* No. 2: GRANTED IN PART AND DENIED IN PART
- Plaintiffs' Motion *in Limine* No. 3: DENIED
- Plaintiffs' Motion *in Limine* No. 4: GRANTED
- Defendants' Motion *in Limine* No. 1: DENIED
- Defendants' Motion *in Limine* No. 2: GRANTED

United States District Court
Northern District of California

- Defendants' Motion *in Limine* No. 3: GRANTED
- Defendants' Motion *in Limine* No. 4: DENIED
- Defendants' Motion *in Limine* No. 5: GRANTED

## I.   LEGAL STANDARD: *DAUBERT* MOTIONS *IN LIMINE*

Federal Rule of Evidence 702 provides that a qualified expert may testify if "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, the Supreme Court held that Rule 702 requires the district court to act as a gatekeeper to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. In *Kumho Tire Co., Ltd. v. Carmichael*, the Supreme Court clarified that the "basic gatekeeping obligation" articulated in *Daubert* applies not only to scientific testimony but to all expert testimony. 526 U.S. 137, 147 (1999). The Supreme Court also made clear that the reliability inquiry is a flexible one, and "whether *Daubert*'s specific factors are, or are not, reasonable measures of reliability in a particular case is a matter that the law grants the trial judge broad latitude to determine." *Id.* at 153; *see also Micro Chem., Inc. v. Lextron, Inc.*, 317 F.3d 1387, 1391 (Fed. Cir. 2003).

"*Daubert* and Rule 702 are safeguards against unreliable or irrelevant opinions, not guarantees of correctness." *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 854 (Fed. Cir. 2010) *aff'd*, 131 S. Ct. 2238 (2011). So long as an expert's methodology is sound and his opinions satisfy the requirements of Rule 702, underlying factual disputes and how much weight to accord the expert's opinion are questions for the jury. *Micro Chem.*, 317 F.3d at 1392; *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010).

United States District Court
Northern District of California

## II.   PLAINTIFFS' MOTIONS *IN LIMINE*

### A.   Plaintiffs' Amended Motion *in Limine* No. 1[1]

In their first amended motion *in limine*, Plaintiffs move to exclude defense expert Carl J. Natale from testifying and to prohibit any reference to his investigation. ECF 71 at 1. According to Plaintiffs, Natale is not a licensed fire investigator and his investigation otherwise "defied the scientific method." *Id*. at 1. Defendants reject to this motion, arguing that Natale is qualified to investigate a fire for litigation purposes and is otherwise qualified to give expert testimony about the origin of the incident fire. ECF 84 at 2-4.

The Court DENIES Plaintiffs' Motion *in Limine* No. 1. Defendants hired Natale to testify regarding "his investigation of the subject fire scene, the origin and cause of the subject fire and other related matters." ECF 71, Exh. 1 (Rule 26 disclosures). Natale has investigated the origin and cause of fires for over 52 years and has numerous certifications on this topic. *See* ECF 84 at 4-5, Exh. B. Cal. Bus. & Prof. Code §§ 7520 and 7521 require that a person who investigates "the cause or responsibility for fires, libels, losses, accidents, or damage or injury to persons or to property" hold a license. These requirements, however, apply to private investigators—not litigation consultants or experts. *Kennard v. Rosenberg*, 127 Cal.App.2d 340, 345-346 (1954) (§§ 7520 and 7521 apply to individuals engaged in business as private investigators and detectives, not experts employed "to make tests, conduct experiments and act as consultants in a case requiring the use of technical knowledge"); *see also State v. Tatalovich*, 129 Nev. 588, 592-594 (2013) (interpreting an analogous Nevada statute). Here, the purpose of the activities underlying Natale's testimony is to gather information to form opinions for trial—not private detective work. As such, Plaintiffs cannot rely on §§ 7520 and 7521 to exclude Natale's testimony. And the Court is not persuaded by Plaintiffs' conclusory allegation that Natale's opinion otherwise runs afoul of *Daubert*. *See generally* ECF 71.

### B.   Plaintiffs' Motion *in Limine* No. 2

In their second motion *in limine*, Plaintiffs move pursuant to *Daubert* to limit the expert testimony of electrical engineer Dr. E.P. Hamilton. ECF 72 at 1. Plaintiffs seek to exclude Dr.

---

[1] The Court TERMINATES Plaintiffs' Motion *in Limine* No. 1 as moot. ECF 70.

1   Hamilton from testifying about "(1) the opinion in his late disclosure that the TCO[2] may have re-

2   solidified, (2[)] the failure of the TCO to open is an unproven hypothesis, and (3) his opinion that

3   the mark on I-bar is not evidence of electrical arcing." *Id*. According to Plaintiffs, Dr. Hamilton is

4   not qualified to give opinions about the TCO and I-bar. *Id*. Defendants object, contending that Dr.

5   Hamilton's supplemental report was timely, his opinion about TCO "merely states that he agrees

6   with Plaintiffs' own engineering expert," and his opinion on the I-bar was proper given his

7   expertise and his examination of the evidence. ECF 85 at 2-4.

8   The Court GRANTS IN PART and DENIES IN PART Government's Motion *in Limine*

9   No. 2. The Court agrees with Plaintiffs that Dr. Hamilton's October 16, 2020 supplemental report

10  is untimely and thus Dr. Hamilton may not offer testimony in connection with the late report. To

11  the extent that Dr. Hamilton's opinions within the supplemental report *agree* with the opinions of

12  Plaintiffs' expert Kevin Lewis, Defendants may introduce them. *See, e.g.*, ECF 85, Exh. B

13  ("Hamilton Depo.") at 124:3-9. The Court precludes Defendants from offering any other

14  information within the supplemental report.

15  The Court denies Plaintiffs' requests to wholesale exclude Dr. Hamilton's opinions about

16  the TCO and I-bar. As noted above, Dr. Hamilton may offer testimony on TCO related to his

17  supplemental report so long as that testimony is in accord with the opinion of Plaintiffs' expert.

18  Beyond that limitation, the Court finds that Dr. Hamilton may properly opine about the subject

19  fan's TCO without having the qualifications of a metallurgist. Dr. Hamilton has been an electrical

20  engineer for 50 years and holds a Ph.D ins engineering. ECF 85, Exh. E. Nothing in Dr.

21  Hamilton's opinion requires him to hold a metallurgy degree or have experience working as a

22  metallurgist. Regarding Dr. Hamilton's opinion on I-bar markings, the Court similarly finds that

23  Dr. Hamilton is qualified through his experience as an electrical engineer. *See id*. Dr. Hamilton

24  also conducted a laboratory examination of the I-bar at issue. Hamilton Depo. at 154-157. To the

25  extent some part of Dr. Hamilton's opinion requires metallurgy expertise, Plaintiffs may resolve

26  these concerns on cross examination.

27

28  [2] TCO is the safety device in the fan that is supposed to shut it off by opening when the motor
    overheats. ECF 72 at 2.

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**C.     Plaintiffs' Motion *in Limine* No. 3**

In their third motion *in limine*, Plaintiffs move to "preclude Dr. Hamilton from testifying that he is not aware of scientific studies or test data where there was a verified result of a similar type of fan and motor igniting or causing a fire." ECF 73 at 1. According to Plaintiff, "Dr. Hamilton criticizes and disputes published articles from the fire science community reporting on ceiling fan fires, but has not published any article, not cited any scientific support for his criticisms, and has not produced the data or reports of his own extensive but unpublished testing." *Id*. Defendants indicate that "Dr. Hamilton's FRCP 26(a)(2) expert report properly assesses Kevin's Lewis' opinions" and argue that Plaintiffs' request is misplaced as the purpose of Fed. R. Evid. 702 "is not to shield an expert's opinion from being scrutinized." ECF 86 at 3.

The Court DENIES Plaintiffs' Motion *in Limine* No. 3. Plaintiffs have not pointed to Court to any authority suggesting that Dr. Hamilton, a defense rebuttal expert, is obligated to conduct his own studies or tests. *Cf. In re High-Tech Emp. Antitrust Litig*., 2014 WL 1351040, at *3 (N.D. Cal. Apr. 4, 2014) ("Rebuttal disclosures of expert testimony are 'intended solely to contradict or rebut evidence on the same subject matter identified by another party' in its expert disclosures." (quoting Fed. R. Civ. P. 26(a)(2)(D)(ii))).

**D.     Plaintiffs' Motion *in Limine* No. 4**

In their fourth motion *in limine*, Plaintiffs move to prohibit defense expert Brian Hennig from testifying about the fair market value of Plaintiffs' personal property losses. ECF 74 at 1. According to Plaintiffs, Hennig "did not offer any testimony regarding the fair market value of Plaintiffs' personal property, or any other valuation, thus rendering this testimony outside the scope of his report and unhelpful to the jury, in violation of FRE 702." *Id*.  Defendants respond that "*neither* party has reliable, verified facts or data to support an opinion as to the fair market value of any of the items included in Plaintiffs' claimed business personal property loss as required under California law." ECF 87 at 3 (emphasis added). According to Defendants, "if Plaintiffs are permitted to offer testimony regarding their business property loss, Brian Hennig must also be permitted to testify regarding his opinions of their evaluation." *Id*.

As an initial matter, the Court highlights that Defendants appear to believe that Plaintiffs'

United States District Court
Northern District of California

1   motion is far broader than Plaintiffs' motion itself suggests. *Compare* ECF 74 at 2 ("Plaintiffs

2   bring this motion *in limine* for an Order prohibiting defense expert Brian Hennig from testifying as

3   to the fair market value of Plaintiffs' personal property losses") *with* ECF 87 at 3 ("Defendants

4   respectfully request that this Court enter an order denying Plaintiffs' Motion *In Limine* No. 4 for

5   an order precluding Defendants from introducing or referring to testimony and records of Brian

6   Hennig."). The Court's holding is limited to the scope of Plaintiffs' more narrow request. Having

7   clarified the scope of this motion, the Court GRANTS Plaintiffs' Motion *in limine* No. 4.

8   Defendants do not contest that Brian Hennig did not determine the fair market value of Plaintiffs'

9   personal property. *See* ECF 87 at 3 ("Brian Hennig did not determine fair market value of these

10  items due to the inadequate data presented by Plaintiffs' experts as well as the passage of time.").

11  As such, Hennig may not offer his opinion on the fair market value of Plaintiffs' personal property

12  loss.

13  **III.    DEFENDANTS' MOTIONS *IN LIMINE***

14      **A.    Defendants' Motion *in Limine* No. 1**

15      In their first motion *in limine*, Defendants move to exclude the testimony of Plaintiffs'

16  expert Kevin Lewis. ECF 64 at 2. Lewis submitted an expert report that provided his opinion as to

17  the cause of the fire at the center of this suit. *Id*. at 2. According to Defendants, Lewis' causation

18  theory is untested and lacks sufficient facts and data. *Id*. at 3-5. Plaintiffs object, arguing that

19  Lewis is not required to conduct testing for his opinion to be admissible. ECF 88 at 1. Plaintiffs

20  also insist that Lewis' opinions are based on his examination of the evidence in this case and

21  supported by his extensive experience with similar fan motors. *Id*.

22      The Court DENIES Defendants' Motion *in Limine* No. 1. The Court is not aware of any

23  caselaw indicating that an expert may not rely on peer reviewed literature as opposed to testing.

24  *See United States v. Sandoval-Mendoza,* 472 F.3d 645, 654 (9th Cir. 2006) ("Expert opinion

25  testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry.

26  And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and

27  experience of the relevant discipline." (internal quotation marks and citation omitted)); *see, e.g.,*

28  *Primiano v. Cook*, 598 F.3d 558, 567 (9th Cir. 2010), *as amended* (Apr. 27, 2010) ("His

methodology, essentially comparison of what happened with Ms. Primiano's artificial elbow with what surgeons who use artificial elbows ordinarily see, against a background of peer-reviewed literature, is the ordinary methodology of evidence based medicine . . .").

### B.   Defendants' Motion *in Limine* No. 2

In their second motion *in limine*, Defendants move to exclude any testimony of Russell E. Gross regarding Plaintiffs' restaurant rebuild. ECF 65 at 2. Plaintiffs disclosed commercial real estate broker Russell E. Gross as an expert witness to offer testimony regarding "the circumstances and efforts that culminated in Mr. Wyman's eventually selling of the [Boulder Creek] property" and  "the value of the property after it was damaged by the fire." *Id*., Exh. A (Rule 26 disclosures). Gross owned a bar and restaurant in Felton, CA, that was also destroyed in a fire. *Id*. at 2. Plaintiffs intend for Gross to testify that "it took 20 months to obtain permits just to start rebuilding, and more than 2 years to rebuild the same footprint as a rebuttal to Defense experts' opinions that Boulder Creek could have been rebuilt and re-opened in just 12 months." *Id*. at 2. According to Defendants, Gross' testimony does not involve circumstances substantially similar to the subject incident and would be unfairly prejudicial under Fed. R. Evid. 403. *Id*. at 3-4. Defendants also argue that Plaintiffs' disclosure of Gross' rebuttal testimony is untimely and inadmissible. *Id*. at 4-5 According to Plaintiffs, Defendants "misconstrue the scope of Russell Gross's testimony in an improper attempt to exclude Mr. Gross from contradicting the factual basis of Defendants' expert Michael Diliberto's opinion." ECF 89 at 1. Plaintiffs insist that they intend to rely on Gross as a rebuttal impeachment witness to "contradict[] Diliberto's assumption that Plaintiffs' business *could have* been rebuilt in 12-15 month." *Id*. at 2 (emphasis added).

The Court GRANTS Defendants' Motion *in Limine* No. 2 with one exception. Gross' testimony related to his own restaurant rebuild has minimal probative value given the disparate factual circumstances involved. This nominal probative value is substantially outweighed by the confusion Gross' testimony may cause. *See* Fed. R. Evid 403. As such, Guess may not testify as to the circumstances surrounding his restaurant rebuild to suggest that a similar fate would have befallen Boulder Creek. Gross' testimony about his experience rebuilding his restaurant would be relevant to impeach Plaintiffs expert Diliberto, however. Defendants may offer Gross' testimony

1    about his restaurant rebuild for this limited purpose. The Court invites Defendants to submit a

2    limiting instruction on this point. The Court also permits the parties to depose Gross.

3        **C.    Defendants' Motion *in Limine* No. 3**

4        In their third motion *in limine*, Defendants move to exclude Richard Medina's testimony

5    about Boulder Creek's lost business income "to the extent the claimed amount raises Plaintiffs'

6    total alleged damages to an amount in excess of $1,134,000.00, and any testimony regarding the

7    Boulder Creek[]'s lost business income after March 29, 2017." ECF 66 at 2. Defendants explain

8    that "Plaintiffs seek to recover lost business income in perpetuity" but caselaw limits their

9    recovery to the period reasonably necessary to get the business back into operation. *Id*. at 4.

10   Defendants further contend that if a business does not open, total damages are limited to the

11   market value of the business on the date of the loss, which, here, would be $1,134,000.00. *Id*.

12   Plaintiffs respond that this motion is unjust and unsupported by law. ECF 90.

13        Under Cal. Civ. Code § 3333, "[f]or the breach of an obligation not arising from contract,

14   the measure of damages, except where otherwise expressly provided by this Code, is the amount

15   which will compensate for all the detriment proximately caused thereby, whether it could have

16   been anticipated or not." While there does not appear to be any California caselaw addressing the

17   extent to which a plaintiff may recover lost business income where a business fails to reopen as a

18   result of defendant's tortious conduct, Defendants cite to various out-of-state authority that

19   suggest the market value of the business on the date of the loss is the total measure of damages

20   under these circumstances. *See Aetna Life & Cas. Co. v. Little*, 384 So. 2d 213, 216 (Fla. 4th DCA

21   1980) ("Lost profits and loss of use may be a proper item of damages if the property or business is

22   not completely destroyed. However, where the property or business is totally destroyed we hold

23   the proper total measure of damages to be the market value on the date of the loss." (internal

24   citations omitted)); *Sawyer v. Fitts*, 630 S.W.2d 872, 874-75 (Tex. App. 1982) ("the proper

25   measure of damages for destruction of a business is measured by the difference between

26   the value of the business before and after the injury or destruction"); *Taylor v. B. Heller and Co*.,

27   364 F.2d 608, 612 (6th Cir. 1966) ("the action for damages for destruction of a business as

28   measured by the difference between the value of the business before and after the injury or

United States District Court
Northern District of California

1  destruction"). Plaintiffs have not offered the Court any caselaw to suggest that the jury may

2  determine how many years of lost profit Plaintiffs may recover without limitation.

3       The Court GRANTS Defendants' Motion *in Limine* No. 3 as to Plaintiffs' lost profits

4  between the date of loss (March 19, 2015) and the present. The Court will, however, allow

5  Plaintiffs to present a theory of damages based on business interruption. There is sufficient

6  evidence that Plaintiffs continued to operate their business at an alternate location at a loss before

7  ultimately shutting that business down in September 2017. *See* ECF 90 at 1 ("After the business

8  was destroyed, Plaintiffs opened and operated The Outpost, a limited menu café, to maintain a

9  presence in the community in anticipation of re-opening. . . The Outpost was not profitable, and

10 Plaintiffs closed it in September 2017."). Under a business interruption theory, Plaintiffs may

11 recover lost profits between the date of loss and the date the Boulder Creek Outpost closed. *See*

12 *Jim's Hot Shot Serv., Inc. v. Cont'l W. Ins. Co.*, 353 N.W.2d 279, 284 (N.D. 1984) ("loss of profits

13 prior to cessation of a damaged business is properly allowable as an element of damages in

14 addition to an allowance for market value diminution because the interim profit losses experienced

15 prior to liquidation of the business are not reflected or compensated for in the market value

16 determination."); *Aetna Life & Cas. Co*, 384 So. 2d at 216 ("Lost profits and loss of use may be a

17 proper item of damages if the property or business is not completely destroyed.").

18     **D.  Defendants' Motion *in Limine* No. 4**

19      In their fourth motion *in limine*, Defendants move to exclude "evidence of replacement

20 cost value, actual cash value and any undisclosed evidence as to the fair market value of Plaintiffs'

21 claimed business personal property loss." ECF 67 at 2. According to Defendants, Plaintiffs'

22 experts improperly relied on an actual cash value methodology as  opposed to a fair market

23 valuation. *Id*. at 2-4. Defendants further argue that "Plaintiffs failed to timely disclose reliable,

24 verified facts or data to support an opinion as to the fair market value of any of the items included

25 in their claimed business personal property loss." *Id*. at 4. Plaintiffs respond that "the testimony

26 and extensive report offered by Plaintiffs' experts and Steve Wyman will greatly assist the jury in

27 their task of evaluating Plaintiff's losses." ECF 91 at 1.

28      The Court DENIES Defendants' Motion *in Limine* No. 4. The parties do not dispute that

1    the appropriate measure of damages is fair market value. But Plaintiffs may also submit other

2    measures of damages to persuade the jury that the evidence is relevant to the fair market value.

3    *Kimes v. Grosser*, 195 Cal. App. 4th 1556, 1560 (2011) ("In personal property cases, plaintiffs

4    may present evidence of the cost of repairs even in cases where recovery is limited to the lost

5    market value of property. . . The cost of repairs constitutes a prima facie measure of damages, and

6    it is the defendant's burden to respond with proof of a lesser diminution in value." (citing *Pfingsten*

7    *v. Westenhaver*, 39 Cal.2d 12, 24 (1952))).

8         Witnesses must have foundation to offer an opinion on the value of Plaintiffs' personal

9    property. Thomas Richmann was retained by an insurance company to prepare an inventory of

10    Boulder Creek's damaged property and to reach an agreement on the valuation of these items.

11    ECF 67, Exhs. A-B; ECF 91 at 2. Plaintiffs disclosed Richmann as a witness who would address

12    lost business personal property. ECF 65, Exh. A (Rule 26 disclosures). Richmann has sufficient

13    foundation to offer an opinion on Plaintiffs' personal property and was properly disclosed for this

14    purpose. The same cannot be said for Plaintiff Wyman. Although Plaintiffs disclosed Wyman as

15    an expert witness who "participated in the evaluation of the extent of damage to the personal

16    property of the business," the only relevant activities that Wyman participated in was identifying

17    personal property for the adjusters who conducted the ultimate valuation. *Id.*; *see also* ECF 67,

18    Exh. D; ECF 91 at 2. While Wyman may testify as to his *personal* knowledge about the value of

19    his personal property, he has no foundation to offer expert opinion on the fair market value of the

20    personal property on the date of the loss.[3] The Court invites a limiting instruction on this issue.

21    **E.    Defendants' Motion *in Limine* No. 5**

22         In their fifth motion *in limine*, Defendants move to "exclude evidence of dissimilar

23    incidents." ECF 68 at 2. Defendants enumerate various "reports, claims, and other material"

24    involving fans that Plaintiffs discussed during defense expert depositions:

25              • An article/report addressing 13 deaths, 130 injuries and 77 million

26

27    _____
      [3] California Evidence Code §813 provides that the owner of property may testify regarding the
      value of the property. The Federal Rules of Evidence do not seem to prohibit the Court's finding

28    that the owner is competent to testify on valuation so long as the owner can establish a sufficient
      foundation for the valuation.

United States District Court
Northern District of California

in property damage from household fires involving fans from 2006
to 2010;
• A 5/31/16 CPSC recall of Broan-NuTone ventilation fans;
• A December 2017 CPSC report concerning ceiling exhaust fan
fires and addressing 494 incidents over a 20-year period and
associated product testing;
• Fire Department issued bulletins warning consumers that ceiling
fans cause fires;
• Report from the Texas Department of Insurance addressing
incidents involving ceiling fan fires;
• Report addressing a 2015 fire at the Delmarva Hotel involving a
ceiling exhaust fan;
• Report addressing a 2015 fire at a Safeway in Green Valley, AZ
involving a ceiling fan;
• A 3/17/17 statement from Wayne Township Fire Captain Mike
Pruitt that fires in bathroom exhaust ceiling fans are not uncommon;
• A statement from Westerville, OH Fire Chief Brian Miller that
there were several fires in the area involving overheating bathroom
exhaust fans;
• A 95 page report to the U.S. Fire Administration involving risk of
fire from exhaust fans;
• A warning from the Stafford County, VA Fire Department
regarding the rise in home fires because of unchecked bathroom
fans;
• A May 2020 warning from the Rochester, MN Fire Department
regarding the risk of fires in ceiling and exhaust fans;
• Broan NuTone reporting in September of 2002 regarding multiple
fan fires over a 14-month period.

*Id.* at 2-3 (citations omitted). Plaintiffs also produced video footage of a purported ceiling fan fire.

*Id.* at 3. Defendants argue that information related to these incidents is speculative, irrelevant,

untrustworthy, and contains inadmissible hearsay. *Id.* at 3. Defendants also argue these incidents

are unfairly prejudicial under Fed. R. Evid. 403. *Id.* at 5. Plaintiffs' response largely focuses on the

admissibility of the December 2017 CPSC Report. ECF 92 at 1. They also argue that Defendants

failed to *specifically* explain why each piece of evidence merits exclusion. *Id.*

The Court GRANTS Defendants' Motion *in Limine* No. 5 with one exception. Plaintiffs

may offer evidence or testimony about the CPSC Report. The Court is satisfied that Plaintiffs have

established the incidents discussed in the CPSC Report are substantially similar to the

circumstances of the instant case. *See* ECF 92 at 2-3. To the extent that there are differences

between the CPSC Report and the instant case that might confuse the jury, Defendants may

properly address these differences on cross examination. And while the CPSC Report may contain

hearsay, experts may rely on hearsay in forming their opinions. *See* Fed. R. Evid. 703 ("If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted . . ."). Plaintiffs may not, however, introduce the identified video of the fan fire, nor any other video of a fan fire. The overwhelming danger of prejudice, inflamed passions, and confusion that showing the jury a video of an unrelated fan fire would cause is so obvious it almost goes without saying. Fed. R. Evid. 403. Finally, Plaintiffs' experts may not testify about or refer to the remaining enumerated material. Plaintiffs have failed to establish a substantial similarity between the incidents implicated in this material and the instant case. *See generally* ECF 92 (focusing on CPSC Report).

* * *

   To the extent disputes arise during trial, the Court is available to address motions on the record at 8:30 A.M. each Court day before the jury arrives. Although a written motion is not required, a party choosing to file a written motion for a hearing the next morning is limited to one three-page motion due by 5:00 P.M. the preceding Court day. If a party intends to raise matters orally it shall inform the Court and the other parties on or before 5:00 P.M. of the intention to appear for a hearing at 8:30 A.M. the following Court day.

   **IT IS SO ORDERED.**

Dated: April 19, 2021

BETH LABSON FREEMAN
United States District Judge